UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:10-CV-270-KSF

MICHAEL HALL, et al.                                                                                      PLAINTIFFS

vs.                                              **OPINION AND ORDER**

TELEFLEX, INC., et al.                                                                                DEFENDANTS

\* \* \* \* \* \* \* \*

This matter is before the Court on the motion of Defendant, Teleflex, Inc. ("Teleflex") to exclude the testimony of Plaintiffs' experts, William Greenlees and Dr. Alan Johnson, and for summary judgment. Defendant Brunswick Corporation ("Brunswick") joined in the motion for summary judgment. For the reasons discussed below, the motions will be granted in part and denied in part.

I.    BACKGROUND

This case arises out of a boating accident at approximately 11:30 a.m. on September 12, 2009, in the Kentucky River near Irvine, Kentucky. Michael Hall and Russell Alexander were participating in a bass fishing tournament with Hall at the wheel of a 1998 Triton TR-18 model boat with a Teleflex rack and pinion steering system. Plaintiffs allege they were bearing left at a bend in the river when they saw a log floating in the middle of the river. Hall testified that he turned the boat further to the left to avoid the log, but then was unable to steer the boat back to the right as the steering wheel would not move, despite two or three attempts. Hall put the boat in neutral but was not able to prevent it from hitting the bank on the left-hand shore. Both Hall and Alexander[1] were injured when the boat hit the bank. Plaintiffs claim that Teleflex negligently manufactured the boat steering system, and that the failure of the steering system caused the accident.

---

[1]   Russell and Kim Alexander settled their claims against Teleflex during mediation.

Teleflex argues that the opinions of Plaintiffs' experts are unreliable and should be stricken. It further argues that, without any expert testimony to support Plaintiffs' claim of manufacturing defect and causation, Teleflex is entitled to summary judgment in its favor. Teleflex also contends that, even if the expert testimony is not stricken, the experts have failed to meet the requirements for showing causation. Finally, Teleflex argues Plaintiffs have failed to produce any evidence to support their claim for punitive damages.

Teleflex summarizes the positions of the parties as follows: "The plaintiffs believe that one or more of the clamp block 'ears' broke and that this caused the steering to fail. Teleflex believes that the steering did not fail and that the clamp blocks fractured when the boat impacted the shore." [DE 31-3, p. 5]. Unfortunately, the broken clamp blocks were thrown away by Hall's family during the process of cleaning the boat. The only evidence of their condition is two photographs of the broken clamp blocks taken by an investigator for Hall's insurance carrier.

The essence of Teleflex's argument regarding Plaintiffs' experts is that they have "concocted a theory" of what happened to the boat in order to match the plaintiffs' testimony. Citing to Greenlees' testimony, Teleflex says: "Greenlees admits, however, that he cannot say with any certainty that the subject accident occurred due to improper assembly; only that he believes this to be the case based on Hall and Alexander's accounts of the accident. (*See* Dep. of William Greenlees at 35-36, 75)." [DE 31-1, p. 7]. Teleflex argues that Dr. Alan Johnson has no "positive proof" of defective manufacture and that his testing experiments failed to support Plaintiffs' theory of liability. *Id.*

II.     ANALYSIS

    A.     **Motion to Exclude William Greenlees and Dr. Alan Johnson**

        1.     Rule 702 and *Daubert* Standard

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence. In the exercise of its gatekeeping role under FRE 702, a district court is responsible

2

for determining the relevance and reliability of all expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The Sixth Circuit summarized the standard for admissibility of expert testimony as follows:

> [A] proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements. First, the witness must be qualified by "knowledge, skill, experience, training, or education." Fed.R.Evid. 702. Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* Third, the testimony must be reliable. *Id.*

*In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 528-29 (6th Cir. 2008). The proponent of expert testimony must prove by a preponderance of the evidence that the testimony is reliable, not that it is scientifically correct. *Id.* at 593. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 596.

In the present case, as in *Scrap Metal*, the defense does not argue that Plaintiffs' experts are unqualified or that their testimony is irrelevant. The challenge here is to the reliability of the testimony, primarily because of its reliance on the testimony of the Plaintiffs. The Sixth Circuit rejected a similar challenge in *Scrap Metal* as follows:

> Columbia's argument is unpersuasive because it fundamentally confuses the *credibility and accuracy* of Leitzinger's opinion with its *reliability*. Contrary to Columbia's assertions, a determination that proffered expert testimony is reliable does not indicate, in any way, the correctness or truthfulness of such an opinion. ... The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation.

*Id.* at 529-530 (emphasis in original). Teleflex argues here that there is nothing but unsupported speculation.

      2.    William Greenlees' Testimony

In making its claim of a speculative opinion, Teleflex takes statements by Mr. Greenlees out of context and omits important facts on which he relied. Mr. Greenlees is a Professional Engineer with over twenty-three years' experience investigating and analyzing matters

3

involving automobiles, motorcycles, recreational vehicles, light, medium and heavy trucks, aircraft, recreational boats and mechanical systems. He has more than thirty-six years' experience in diversified design, development, testing, and forensic analysis. He is a Senior Forensic Engineer for Verifact Corp. and conducts investigations with forensic expertise in the areas of accident reconstruction, mechanical failure analysis, product liability investigation, and the like. From 1972 to 1980, he oversaw engineering work involving testing and design with Glastron Boat Company and its parent company. [DE 36-15].

As part of his work on this case, Mr. Greenlees reviewed the Accident Report dated September 22, 2009; the depositions of Fish & Wildlife Officer Jared Northern, insurance adjuster David Timpani, Russell Alexander, and Michael Hall; several photographs of the boat after the accident; the testing performed on both the exemplar and the subject steering cable systems; Teleflex high load testing; and the report and rebuttal report of Defendants' expert, Robert K. Taylor. [Greenlees' Report and App. A].

Officer Jared Northern and his supervisor, Officer Jim Harrison, investigated the boating accident the afternoon it occurred.[2] [Northern Depo., pp. 11-13, 21]. They observed and photographed the boat after it was hauled to the ramp, and they attempted to locate the crash site. *Id.* at 14, 18. When Northern tried to move the motor on the boat, it was "locked up" and would not turn. *Id.* at 30-34. He testified that it would move in only one direction, but not the other. *Id.* and p. 57. Mr. Northern also spoke to Mr. Alexander at the UK Medical Center. *Id.* at 15.

David Timpani, owner of Timpani Marine Survey, was retained by State Farm Mutual Ins. Co. to inspect the boat to determine the cause of the collision and the extent of the damage. [Timpani Depo., p. 43]. He conservatively estimated that he investigated 150 boat crashes a year for the past 15 years. *Id.* at 7. He examined and photographed the boat on September 24, 2009.

---

[2] Teleflex notes this was Mr. Northern's first boating accident investigation, but it fails to mention that his supervisor was involved.

4

*Id.* at 11. His photographs show normal propeller wear and tear and no obvious collision damage as would be expected if the propeller hit a log. *Id.* at 25, 36-37. There was no visible damage on the leading edge of the gear case and skeg to show a collision. *Id.* at 47-48. He observed the clamp box from the rack and pinion steering and that the cables were outside of the housing, rather than where they should be. *Id.* at 27-28. When he grabbed the steering wheel, he saw "the outside jackets were moving back and forth and the inside was staying still, so the motor wasn't turning." *Id.* at 29. Mr. Timpani also photographed the clamp box and the two broken clamps. *Id.* at 29-31. He concluded:

> All damage observed is consistent with a collision. A mechanical breakdown of the rack and pinion steering system caused Mr. Hall to lose control and crash into the bank.

[DE 36-7]. He noted that the only collision with the steering system was when Hall's body hit it as the boat hit the bank. *Id.* at 42. There was no evidence of the clamps being struck by anything. *Id.* at 50. He did not believe the collision with the bank could have caused the clamp failure "because there is no collision point anywhere near those clamps." *Id.* He did not see anything wrong with the boat other than the impact points and normal wear and tear. *Id.* at 51.

Mr. Greenlees inspected the boat and the gear case on several occasions. [Greenlees Report, DE 36-16]. "An inspection of the leading edge of the gear case concluded there is no evidence of a substantial impact with an object." *Id.* at 6. He tested the torque required to turn new exemplar steering cables and the subject steering cables. "The new steering cables required approximately 15 in-lbs to turn in both the right and left directions. The subject steering cables required approximately 5 ft-lbs for right turns." *Id.*

Mr. Greenlees also reviewed Teleflex documents reflecting testing of steering cable systems where the operational load was increased until failure. The typical failure occurred at the gear teeth. In the subject system, there was no material failure in the pinion or rack teeth. *Id.* Accordingly, he concluded "it is not probable the subject steering cable experienced an unusually

5

high operational load that would cause failure in a properly manufactured/assembled steering system." *Id.* at 6-7.  Teleflex documents also revealed "numerous problems with the integration of the clamp blocks into the steering cable assembly resulting in steering cable failures." *Id.* at 7.

Mr. Greenlees considered other potential causes for a steering failure.  He noted that corrosion would be a slow developing problem with increased steering loads.  Accordingly, he concluded "corrosion is not a probable cause of the steering failure experienced by Mr. Hall." *Id.* He reviewed the photographs of the clamp blocks and noted that the failure of the steering system resulted in separated broken pieces of the clamp blocks being in the steering rack housing. *Id.* at 8.  None of Teleflex's test-to-failure reports resulted in clamp block breaking.

Plaintiffs note that Teleflex's expert, Robert Taylor, designed a test where a massive impact load was dynamically applied to an exemplar steering system with the intended purpose of reproducing a clamp block failure.  The test failed.  Standard steering system components failed under the high load, but the clamp blocks did not. [DE 36, p. 8].

   3. <u>Dr. Alan Johnson's Testimony</u>

Dr. Johnson is a metallurgist with a sub-specialty in accident reconstruction as it relates to his expertise in metallurgy. [Johnson Depo., pp. 37-38].  He has a Ph.D. in metal physics and over forty years' experience in failure analysis and accident reconstruction. [DE 36-19, p. 2].

In his accident reconstruction analysis, Dr. Johnson observed that the photographs of the two clamp blocks from the steering system show "that small 'ears' have broken off the two inside corners of each one." *Id.* at 6.  He determined the metallic composition of the clamp blocks and helm casting and noted these were widely used die casting alloys. *Id.*  He reported that the torque required to move the cable in Hall's boat was "4 to 10 times as difficult ... as it was for a new cable." *Id.* at 10.

Dr. Johnson examined all of the rack's gear teeth and the pinion gear teeth in a stereoscopic optical microscope.  There was no evidence of damage to the teeth.  He also

6

observed numerous scratches and scrape marks on the inside surface of the lower rack housing, as well as on the inside of the upper rack housing. *Id.* at 11-12.

After reconstructing the accident, Dr. Johnson concluded, based on a reasonable degree of engineering probability, that during the manufacturing process of the steering mechanism, the rack was not fully inserted into its casing.[3]  When a final crimping operation was carried out on the casing, four ears adjacent to the crimping sites were fractured or cracked.  [Johnson Depo., pp. 60, 126].  Dr. Johnson considered the possibility that dirt or grit got into the rack after the accident and caused the scratches, but he concluded it was more likely that the scratches were caused by fragments of the ears.  *Id.* at 68-69.  He noted that the rack was not dirty in the pictures and was up under the console with little exposure to dirt.  *Id.* at 69.  The clamp blocks were in a sealed rack housing where they were not subject to moisture or dirt or anything else.  *Id.* at 84.

Dr. Johnson also considered Teleflex documents showing trouble with looseness of the clamp blocks and experimentation with different settings of the crimping press.  *Id.* at 70.  While that is not the sole basis for his assumption of a defect in the manufacturing process, he noted that other assumptions do not produce results that are consistent with the physical evidence and the witness statements.  *Id.* at 71-72.  His opinion contemplates that a fatigue process over the twelve-year use of the boat may have occurred.  *Id.* at 74.  Dr. Johnson also considered an argument that the clamps broke when a massive impact load, such as hitting the beach or hitting a log, was dynamically applied to an exemplar rack and pinion steering system. [DE 36-19, p. 14].  However, Teleflex's tests of such overload forces "usually causes failure of gear teeth in the rack and pinion and never failure of the clamp blocks."  *Id.*  Accordingly, Dr. Johnson rejected this suggested explanation.

---

[3] There appears to be no dispute that an employee must properly align the cable ends, rack housing and clamp blocks before the parts are "crimped" together by a hydraulic press. [DE 36, pp. 8-9].  Clamp block crimping failures were not unknown at Teleflex. *Id.* at 10-12.

To test his hypothesis, Dr. Johnson created a simulated ear from scrap aluminum. [Johnson Depo., p. 75]. Through extensive experimenting, he discovered that the exact same result of jammed steering, as described by Plaintiff Hall and Officer Jared Northern, "could be obtained by jamming the simulated ear between the pinion gears and the pinion housing." *Id.* at 76. He next considered how the ear could have gotten from the point where it fractured off the clamp to the point where it could lodge in the pinion. *Id.* at 79. The simulated ear could get through the double-wide tooth at the end of one of the slots when the rack was open, but could not get through when the plastic cover was on the bottom of the rack. *Id.* Dr. Johnson subsequently realized that the broken ear would go through if it was slightly smaller. *Id.* Additionally, he realized that if the ear "breaks off and falls into the rack housing and the rack goes off to the far left, it can just go down and fall through the hole into the pinion." *Id.* at 82; DE 36-19, p. 15. The rack position would be consistent with a hard left turn. Johnson Depo., 93.

With respect to a potential design defect, Dr. Johnson noted that the clamp blocks could have been made of stainless steel. *Id.* at 124. However, he also acknowledged that the cost of stainless steel and the energy required for casting would be "a lot more expensive." *Id.* at 125.

### 4. Discussion

Teleflex argues in its reply that some of the evidence on which Plaintiffs rely is hearsay, which may not be considered in ruling on a summary judgment motion. [DE 40, p. 2]. For example, they complain that the Boating Accident Report "is replete with hearsay statements by Alexander not subject to any exception." *Id.* However, Alexander was deposed on April 4, 2011, and testified consistently with his statements contained in the Accident Report. *See* DE 37, pp. 3-4. Teleflex does not suggest any reason that his deposition testimony would inadmissible.

Teleflex further argues that the deposition testimony of Jared Northern and David Timpani on their factual observations and their opinions regarding possible causes of the accident are inadmissible because neither is qualified to render expert opinions. [DE 40, p. 2]. While Officer

8

Northern had not investigated a boating accident before, he unquestionably is familiar with boats and motors and whether this motor was "locked up" and would not turn both ways when he attempted to turn it the afternoon of the accident. His photographs are also admissible. Mr. Timpani, on the other hand, has extensive experience investigating boat crashes. His observations, photographs and opinions on potential causes of the crash definitely could be relied upon by Plaintiffs' experts Greenlees and Johnson. Under F.R.E. 703, an expert is entitled to base his opinion on facts or data made known to him, even if those facts or data are inadmissible, so long as they are "of a type that are reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Fed. R. Evid. 703. A testifying expert "is entitled to rely on the reports and opinions of other experts where those reports are of a type reasonably relied upon by experts in the particular field." *Logan v. Cooper Tire & Rubber Co.*, 2011 WL 3267891 at *4 (E.D. Ky. July 29, 2011).

Next Teleflex argues that Greenlees relied primarily on the deposition testimony of Hall and Alexander and that his "conclusion was based on nothing more than an assumption that Hall's and Alexander's self-serving accounts were true." [DE 40, pp. 5-6]. First, this statement is not true as evidenced by the above discussion on the bases for Greenlees' testimony. Second, there are several corroborating factors for Hall's and Alexander's accounts. Hall's 911 call for emergency medical assistance immediately after the accident states in part: "And the steering broke and we crashed in the bank. I think my leg's broken." [DE 36-2]. Both Fish & Wildlife Officer Northern and insurance investigator Timpani said the motor was not turning. Alexander observed that Hall "was jerking on the steering wheel" and Alexander "could tell the steering wheel was just not moving." [Alexander Depo., pp. 23, 29]. The physical evidence is inconsistent with the clamp blocks breaking from the impact with the shore or with a log. Even Teleflex's tests involving excessive force on the steering mechanism failed to break the clamp blocks. The evidence suggests that the primary speculation in this case is Teleflex's assumption that Hall and Alexander are lying.

9

Mr. Greenlees and Dr. Johnson considered other potential causes for the accident and provided sound reasons for rejecting them. "[O]nly where a defendant points to a plausible alternative cause and the [expert] offers no explanation for why he or she has concluded that was not the sole cause, that [expert's] methodology is unreliable." *Potts v. Martin & Bayley, Inc,* 2011 WL 4703058 at *5 (W.D. Ky. 2011), quoting *Heller v. Shaw Indus., Inc.,*, 167 F.3d 146, 156 (3d Cir. 1999). The Court is satisfied with Plaintiffs' experts' efforts to identify the cause of the accident and to rule out other possible alternative causes. It finds that their opinions in this respect are sufficiently reliable and would assist the trier of fact. The arguments made by Teleflex, such as claiming the experts misinterpreted Teleflex data, go to the weight and credibility of the expert testimony, not to its admissibility. Accordingly, the Court will deny the motion to exclude the testimony of Plaintiffs' experts.

### B.  Motion for Summary Judgment on Liability

Teleflex moved for summary judgment on liability on two grounds.[4] First, it argued that Plaintiffs' experts' testimony should be excluded, and that exclusion would leave the case without sufficient evidence of a manufacturing defect. Because the Court has ruled the experts' testimony is admissible, that argument is moot. The second argument was that, even if the experts were permitted to testify, there is insufficient evidence of causation. The Court disagrees; accordingly, the motion for summary judgment will be denied.

To prevail on a theory of manufacturing defect, a litigant must show that a product "was not manufactured or assembled in accordance with its specifications" and that the deviation was a "substantial factor" in his injury. *Greene v. B.F. Goodrich Avionics Systems, Inc.*, 409 F.3d 784, 788 (6th Cir. 2005). A defendant will be held strictly liable if the plaintiff proves the product was "in a defective condition unreasonably dangerous to the user or consumer." *Montgomery Elevator Co.*

---

[4] Brunswick joined in Teleflex's motion [DE 35] and also filed a separate motion for summary judgment on different grounds [DE 32].

*v. McCullough by McCullough*, 676 jS.W.2d 776, 780 (Ky. 1984).  "Nothing precludes a plaintiff from using circumstantial evidence to prove a products liability case so long as the evidence is 'sufficient to tilt the balance from possibility to probability.'" *Greene*, 409 F.3d at 788.  Additionally, a plaintiff need not show that a manufacturing defect was the **only** cause of the injuries.  Instead, the defect need only be a "substantial factor."  *Id.*

In *Greene*, the plaintiff failed to show that a manufacturing defect in the Goodrich vertical gyroscope caused the helicopter crash, because the evidence established it was equally likely that the accident was caused by a defective Attitude Director Indicator ("ADI").  *Id.* at 791-92.  Accordingly, the scales were not tipped past possibility for a manufacturing defect in the gyroscope.  *See Low v. Lowe's Home Centers, Inc.*, 771 F. Supp.2d 739, 744-45 (E.D. Ky. 2011) (where the scales were tipped to probability).  In the present case, the scales were also tipped to probability.  The other potential causes of the broken clamps and jammed steering are inconsistent with the physical evidence and inconsistent with Teleflex's own testing involving application of excessive force to the steering system.

Teleflex seeks to distinguish Plaintiffs' circumstantial evidence cases, *Perkins v. Trailco Mfg. and Sales* Co., 613 S.W.2d 855, 857 (Ky. 1981), and *Gentry v. General Motors Corp.*, 839 S.W.2d 576, 579 (Ky. Ct. App. 1992), on the basis that the vehicles in both of those cases were new and complaints made early.  While failure of a new product may provide circumstantial evidence of a manufacturing defect, other circumstantial evidence can point to the probability of a defect in an older product.  In *Greene*, the court considered circumstantial evidence of a defect, despite the fact the helicopter was not new.  *Greene*, 409 F.3d at 791-92.  When the present case evidence is viewed in the light most favorable to Plaintiffs, summary judgment should be denied.

        C.      **Motion for Summary Judgment on Punitive Damages**

Defendants argue there is insufficient evidence to support a claim for punitive damages. Under Kentucky law, Plaintiffs must prove by clear and convincing evidence that Defendants "acted

toward the Plaintiff(s) with oppression, fraud or malice." KRS 411.184(2). Additionally, punitive damages may be awarded where the Defendant acted with gross negligence, which is a "wanton or reckless disregard for the safety of other persons" and is "so outrageous that malice can be implied from the facts of the situation." *Oaks v. Wiley Sanders Truck Lines, Inc.*, 2008 WL 2859021 at *2 (E.D. Ky. July 22, 2008) (quoting *Kinney v. Butcher*, 131 S.W.3d 357, 359 (Ky. Ct. App. 2004)). A plaintiff must show not only an injury-causing product defect, but also that the defendant's conduct was outrageous, or at least grossly negligent, such that it amounted to reckless disregard for the lives and safety of others. *Phelps v. Louisville Water Co.,* 103 S.W.3d 46, 52 (Ky. 2003).

In opposition to the motion for summary judgment, Plaintiffs rely on evidence that "Teleflex knew in 2000 that numerous rack and pinion steering systems were defective due to the clamp blocks not being properly installed." [DE 36, p. 23]. Plaintiff notes that the steering system in issue was assembled in May 1997, but that Teleflex did not produce any documents for 1997 and 1998 and its designated representative could not speak to that issue. Plaintiffs ask for a rebuttable presumption that the missing documents would prove their case. *Id.* at 24.

Teleflex replied that warranty data prior to 2000 "simply does not exist." [DE 40, pp. 13-14]. Moreover, even if there were similar returns in 1997, there is no evidence of any accident involving jamming of the steering system, much less evidence to give rise to a presumption of gross negligence. *Id.* at 14-15. There also is no evidence that Teleflex intentionally destroyed evidence or otherwise acted in bad faith.

The Court agrees that Plaintiffs have failed to produce sufficient evidence to support a claim for punitive damages. Accordingly, the motion will be granted.

### III.   CONCLUSION

    A.    Teleflex's motion [DE 31] to exclude Plaintiffs' experts, William Greenlees and Dr. Alan Johnson, is **DENIED**;

B. Defendants' motion [DE 31] for summary judgment on the issue of liability is **DENIED**;

C. Defendants' motion [DE 31] for summary judgment on the issue of punitive damages is **GRANTED**; and

D. Brunswick's separate motion for summary judgment [DE 32] is not encompassed within this Opinion and will be addressed by a later Opinion and Order.

This January 17, 2012.

Signed By:
*Karl S. Forester* KSF
**United States Senior Judge**